NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SHADEED MUHAMMAD, | : | Civil Action No. 03-2527 (JAG) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| TERRANCE MOORE, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

    SHADEED MUHAMMAD, #337924B
    East Jersey State Prison
    Lock Bag R
    Rahway, New Jersey  06065
    Petitioner pro se

    JENNIFER M. BLUM, Deputy Attorney General
    ATTORNEY GENERAL OF NEW JERSEY
    Hughes Justice Complex
    P.O. Box 112
    Trenton, New Jersey  08625
    Attorneys for Respondents

**GREENAWAY, JR.**, District Judge

    Shadeed Muhammad filed a Petition seeking a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(a), accompanied by a letter brief and appendix, challenging a disciplinary sanction. Respondents filed an Answer, with pertinent portions of the record. For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

On July 28, 2000, in the course of a routine cell search, prison officials at East Jersey State prison ("EJSP") seized one pink pill, later identified as Darvocet, from Petitioner's cell. Officials charged Petitioner with disciplinary infraction #.203, possession or introduction of any narcotic paraphernalia, drugs or intoxicants not prescribed by medical staff.  Upon investigation, officials determined that the medical staff had prescribed Darvocet for Petitioner from April 27, 2000, through May 4, 2000.  Based on this report, the charge was amended to #.205, misuse of authorized medication.

The disciplinary hearing took place on August 3, 2000.  Petitioner argued that, since he did not use the medication, he could not have misused it.  He also maintained that, having one pill left over from his prescription did not constitute an accumulation of the drug and that he was unaware of any rule requiring that prescribed medication be taken in the presence of medical personnel.  The hearing officer found Petitioner guilty of misuse of prescribed medication and imposed the following sanctions:  15 days in disciplinary detention, loss of 30 days of recreation, loss of 180 days of good conduct time, urine monitoring for 180 days, and permanent loss of contact visits.[1]

---

[1] The hearing officer provided the following reason for the sanctions:

> The issue is not whether or not I/M elected not to use the medication - he should have taken it w/in the prescribed time frame involved or refused it outright.  His retention of same constitutes a misuse in that it can be used for illicit purposes.

(Dept. of Corrections Adjudication of Disciplinary Charge, dated July 31, 2000, at Ra22.)

Petitioner filed an administrative appeal. On August 7, 2000, Associate Administrator Lydell Sherrer upheld the decision of the hearing officer because he determined that it was based upon substantial evidence. (Disposition of Disciplinary Appeal, dated Aug. 7, 2000, at Ra26.)

Petitioner appealed to the Superior Court of New Jersey, Appellate Division. By order filed November 13, 2000, the Appellate Division granted Petitioner's motion to supplement the record. In an opinion filed December 18, 2001, the Appellate Division affirmed the adjudication but remanded for reconsideration of the sanctions. Muhammad v. N.J. Dep't of Corrections, No. A-530-00T3 slip op. (App. Div. Dec. 18, 2001). The Appellate Division affirmed the determination based on the following:

> We are satisfied that the adjudication of guilt was entirely unexceptionable and must be affirmed. Defendant's arguments do not constitute a cognizable defense, and harsh as that may seem, the fact remains that retaining medication beyond the prescription period meets the elements of the offense charged. We are, moreover, satisfied that defendant was accorded the full extent of the due process to which he was entitled.

Muhammad v. New Jersey Dep't of Corrections, No. A-530-00T3 slip op. at 2-3 (App. Div. Dec. 18, 2001). On June 12, 2002, the Supreme Court of New Jersey denied Petitioner's petition for certification, without prejudice to an appropriate appeal to the Appellate Division after the entry of final judgment by respondent. Muhammad v. Dep't of Corrections, 174 N.J. 39 (2002) (table).

After a re-hearing, on January 16, 2002, the hearing officer imposed the same sanctions based on the following rationale:

> This is needed as a deterrent due to the potential health and security problems that can result from misuse of medication. Explanation and prior record are considered. The medication is CDS and the loss of contact visits must be imposed. The unusual

> circumstances of the other inmates with .205 charges have been provided. (Hearing Officer reviewed the other inmate's charge).

(Adjudication of Disciplinary Charge, dated January 16, 2002, at Ra42.)

Attached to the decision is a copy of a memorandum dated January 14, 2002, from Associate Administrator Walter Wise to the hearing officer. The memorandum states:

> Please be advised that Ruiz #301389 & Chandler 241084 (.205 charges received in August 1998) had their charges rescinded by Administrator Moore due to an exceptional circumstance. It was determined that the water fountain by the hospital dispensing area was unsanitary on the day that the charges were issued.

(Ra43).

Petitioner appealed to Terrance Moore, Administrator of EJSP, arguing that the hearing officer failed to explain why the #.205 charges in the cases of Ruiz and Chandler, which occurred in 1998 and 1999, were rescinded on appeal, when Petitioner's appeal, which involved comparable facts, was affirmed. Petitioner further maintained that there was no evidence that he had violated any prohibited act requiring the imposition of the Zero Drug/Alcohol Tolerance Policy. (Ra45.) On February 1, 2002, Assistant Superintendent Carolyn Abboa-Offai upheld the decision of the hearing officer. (Ra49.)

Petitioner executed the Petition which is now before the Court on May 14, 2003. The Clerk received it on May 19, 2003. The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents one ground:

> NEW JERSEY'S DEPARTMENT OF CORRECTIONS DRUG POLICY VIOLATES PETITIONER'S FIRST, EIGHTH AND

4

>    FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED
>    STATES CONSTITUTION.

(Letter Brief at 8, Ground One.)

The State filed an Answer seeking dismissal of the Petition as unexhausted and because Petitioner has not satisfied the standard for habeas relief.

## II. STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging the detention of a prisoner in custody, pursuant to a state court judgment, only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361,

368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[2] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

---

[2] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

A court begins the analysis by determining the relevant clearly established law.  See

Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004).  Clearly established law

"refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the

governing legal principle or principles set forth by the Supreme Court at the time the state court

renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Claims

      Petitioner challenges the disciplinary sanctions on the following ground:

> Ground One:  NEW JERSEY'S DEPARTMENT OF CORRECTIONS DRUG POLICY VIOLATES PETITIONER'S FIRST, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

(Pet. ¶ 12.A, Letter Brief, Ground One, at 8.)    Petitioner maintains that the disciplinary

sanctions, i.e., permanent loss of contact visits, 30 days loss of recreation, loss of 180 days of

good conduct credits, 15 days confinement in disciplinary detention, and 180 days of urine

monitoring, inflicted cruel and unusual punishment prohibited by the Eighth Amendment,

applicable to states through the Fourteenth Amendment.  Petitioner relies on Kentucky Dep't of

Corrections v. Thompson, 490 U.S. 454 (1989), and Pell v. Procunier, 417 U.S. 817 (1974).

      In Kentucky Dep't of Corrections v. Thompson, the Supreme Court determined that

inmates have no protected liberty interest in  unfettered visitation, 490 U.S. at 460-65.  In Pell,

inmates and journalists claimed that a prison regulation prohibiting face-to-face interviews

between press representatives and individual inmates whom they specifically named and

requested to interview violated the First and Fourteenth Amendments.  Noting that the regulation prohibits only one form of communication, face-to-face interviews, and permits written communication with members of the news media, the Court rejected the prisoners' claim.

> When . . . the question involves the entry of people into the prisons for face-to-face communication with inmates, it is obvious that institutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives of the corrections system itself, require that some limitation be placed on such visitations.  So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, we believe that, in drawing such lines, prison officials must be accorded latitude.

Pell, 417 U.S. at 826.  These cases do not support Petitioner's claims.

New Jersey's "Zero Tolerance Drug/Alcohol Policy" mandates the termination of contact visit privileges for inmates found guilty of disciplinary charges involving drugs.  See N.J.A.C. 10A:18-4-5.1(c)(1) & (2); N.J.A.C. 10A:1-2.2.[3]  Petitioner's constitutional challenge to the policy fails, however, because the Supreme Court of the United States determined in Overton v. Bazzetta, 539 U.S. 126 (2003), that the denial of contact visits does not violate an inmate's First,

---

[3] "'Zero Tolerance Drug/Alcohol Policy' means a zero tolerance for the possession/sale/use by State prison inmates of any drugs, intoxicants or narcotic paraphernalia not prescribed for the inmate by medical or dental staff.  This policy establishes that inmates found guilty of drug/alcohol related prohibited acts  . . . shall have their contact visit privileges terminated while housed in New Jersey State prisons and correctional facilities in addition to being subject to administrative action . . ."

N.J.A.C. 10A:1-2.2; accord N.J.A.C. 10A:4-5.1(c).  Inmates may request reinstatement of contact visit privileges by forwarding a written request to the Administrator 365 days after the date of termination.  See N.J.A.C. § 10A:18-6.20.  Inmates like Plaintiff, who have been found guilty of a second drug/alcohol prohibited act, may not request reinstatement of contact visit privileges until the expiration of 365 days for each violation.  Id.

Eighth or Fourteenth Amendment rights.  See Overton v. Bazzetta, 539 U.S. 126 (2003).[4]  As the Court explained,

> the restriction on visitation for inmates with two substance-abuse violations . . . serves the legitimate goal of deterring the use of drugs and alcohol within the prisons.  Drug smuggling and drug use in prison are intractable problems.  Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose.  In this regard we note that numerous other States have implemented similar restrictions on visitation privileges to control and deter substance-abuse violations.

Id. at 134 (citations omitted).

Given Overton, the denial of contact visits does not violate Petitioner's constitutional rights.  As Petitioner has not shown that the imposition of disciplinary sanctions violates or is an unreasonable application of clearly established federal law, as determined by the Supreme Court, he is not entitled to habeas relief and this Court will dismiss the Petition with prejudice.

B.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

---

[4] See also Block v. Rutherford, 468 U.S. 576, 589 (1984); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 759-60 (3d Cir. 1979).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


        S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


DATED: October 25, 2005